**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JERRY GLASGOW,**

       **Plaintiff,**

  **v.**                       **Civil Action 2:15-cv-1831
Judge Algenon L. Marbley
Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Jerry Glasgow filed this action under 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits and supplemental social security income.  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED** and judgment be entered in favor of the Commissioner.

## I.  BACKGROUND

### A.  Prior Proceedings

Plaintiff applied for disability insurance benefits and supplemental social security income on October 20, 2011, alleging disability beginning on April 15, 2006.  (Doc. 10, Tr. 171-72, PAGEID #: 218-19; *id.* at PAGEID #: 381).  His claim was denied initially on April 30, 2012 (*id.* at PAGEID #: 218-19) and on reconsideration on October 17, 2012 (*id.* at PAGEID #: 244-45). Plaintiff requested a hearing, and Administrative Law Judge Lorenzo Level (hereinafter "ALJ Level") denied benefits.  (*Id.* at PAGEID #: 261.)  Plaintiff sought Appeals Council review of the

October 2013 decision, and the Appeals Council remanded.  Following remand, Administrative Law Judge Ryan Glaze (hereinafter "the ALJ") held two hearings.  At the first, in May of 2014, Plaintiff and a vocational expert testified.  (*Id.* at PAGEID #: 113-171.)  At the second, in September of 2014, the ALJ received medical expert testimony and additional vocational expert testimony.  (*Id.* at PAGEID #: 172-193.)  Plaintiff was represented by counsel at both hearings. (*Id.* at PAGEID #: 113, 172.)

The ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014.  (Doc. 10, Tr. 21, PAGEID #: 68.)  Next, he determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 15, 2006.  (*Id.*)  In the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had the following severe impairments: obesity, probable COPD, major depression, adjustment disorder, obsessive compulsive disorder, generalized anxiety, alcohol dependence, alcohol abuse, and polysubstance abuse in remission.  (Doc. 10 at Tr. 29, PAGEID #: 76).  The ALJ found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments.  (*Id.* at PAGEID #: 70.)

The ALJ further found that Plaintiff retained the residual functional capacity to perform light work with additional limitations.  (*Id.* at PAGEID #: 72-84.)  In particular, the ALJ concluded Plaintiff could not climb ladders, ropes or scaffolds; could only occasionally balance, stoop, kneel, crouch, crawl or climb ramps/stairs; and should avoid concentrated exposure to dust, fumes, odors, gases, and poor ventilation.  (*Id.* at PAGEID #: 72.)  Plaintiff could, however, understand, carryout, and remember simple instructions and make judgments on simple work in low stress work environment, which he defined as precluding high production quotas, strict time

requirements, arbitration, negotiation, confrontation, directing the work of, or being responsible for safety of others.  (*Id.*)  Plaintiff could perform work that involved no more than occasional interaction with supervisors and coworkers and no direct interaction with the public.  (*Id.*)

The ALJ ultimately found Plaintiff could perform jobs existing in the national economy in significant numbers and Plaintiff thus was not disabled within the meaning of the Social Security Act.  (*Id.* at PAGEID #: 85-86).  The ALJ denied benefits on November 24, 2014.  That decision became the Commissioner's final decision on March 19, 2015, when the Appeals Council denied Plaintiff's request for review.  Plaintiff then brought this action.  (*See* Doc. 10 (administrative record); Doc. 11 (statement of errors); Doc. 19 (the Commissioner's response); Doc. 20 (Plaintiff's reply)).

## B.  The Record

### 1.  Plaintiff's Interviews And Hearing Testimony

Plaintiff was interviewed telephonically in February 2011 and January 2012.  During the first interview, Plaintiff reported that he prepares meals for himself, takes medications independently, bathes, watches television, does dishes, vacuums, and takes out the trash.  (Doc. 10, Tr. 386, PAGEID #: 433.)  In addition, he leaves the house 1-2 times per week, going to the library or a friend's house.  (*Id.*)  He does, however, want to sit and cry 1-2 times per week, gets anxious around people, and becomes anxious or shaky when alone.  (*Id.*)

During the second interview, Plaintiff reported performing similar housework and maintaining similar personal hygiene.  (Doc. 10, Tr. 398, PAGEID #: 445.)  At the time of the second interview, Plaintiff was living with a friend and noted that a friend helps him pay bills but also reported seeing his family infrequently.  (*Id.*)  He described his daily routine as primarily

watching television, sleeping, and eating.  (*Id.*)  He also reported an inability to complete his disability forms because he had difficulty understanding what he read, an inability to handle stress or changes in routine, and difficulty going outside or going to work because he did not want to be around others.  At the time of the interview, Plaintiff was taking Seroquel and Cymbalta.  (*Id.*)

In addition to the interviews, Plaintiff testified at the hearing before the ALJ on May 30, 2014.  Plaintiff was born on October 31, 1970.  (*Id.* at PAGEID #: 134.)  He attended school through the eleventh grade and has State Tested Nursing Assistant ("STNA") training.  (*Id.* at PAGEID #: 121.)  He testified he is homeless and stays with friends, his mother, or sleeps in a tent.  (*Id.* at PAGEID #: 120.)  He held a number of jobs between 1998 and 2002, including: working full-time at Cambridge Tool and Die in 1998 in 1999, assembling heaters and things; working for two months part-time at Net Tech Industries, running a shearing machine; and working at Zanesville Welfare and Goodwill, both part- and full-time in 2001 and 2002.  (*Id.* at PAGEID #: 122-126.)  He worked full-time as a cleaner at the Guernsey Senior Center in 2002 and part of 2003.  (*Id.* at PAGEID #: 126.)  For the remainder of 2003, and again in 2005, he worked at Mancan Incorporated, stuffing envelopes part-time.  (*Id.* at PAGEID #: 127-128.)  He then worked for Walmart's tire and lube department from 2004 until 2006.  (*Id.* at PAGEID #: 128-129.)  He next worked at Six County, Inc., a mental healthcare provider, and then Legacy Staffing in 2011.  (*Id.* at PAGEID #: 129.)  That was his last job.  (*Id.*)

Plaintiff testified that his mental issues were his most severe medical concern.  (*Id.* at PAGEID #: 135.)  In response to his counsel's questioning, Plaintiff testified: his anxiety affects his ability to "deal with people"; he is unable to go to the store by himself; he has crying spells;

4

he has mood swings; he loses his temper; and he has difficulty remembering and concentrating. (*Id.* at PAGEID #: 135-139.)  He further testified he has suicidal thoughts three or four times a month.  (*Id.* at PAGEID #: 139.)  In response to the ALJ's questioning, Plaintiff stated he currently does not have a mental healthcare provider.  (*Id.* at PAGEID #: 146.)

As to his physical ailments, Plaintiff testified he has pain in his lower and middle back and pain in both legs.  (*Id.* at PAGEID #: 140.)  Without medication, he rates his pain as a seven out of ten.  (*Id.*)  He has numbness and tingling in his right leg and arthritis in his right ankle. (*Id.* at PAGEID #: 141.)  He testified he could sit in a chair for "maybe ten, 15 minutes without moving."  (*Id.* at PAGEID #: 144.)  He cannot walk a block without taking a break and can stand in one place for only three or four minutes without needing to move.  (*Id.* at PAGEID #: 145.)

## 2. Medical Records

### a. Mental Health Records

The medical records in this case show Plaintiff was psychiatrically hospitalized in 2006 and again in 2007, for complaints of suicidal ideation, and diagnoses of recurrent major depression, alcohol addiction, and narcotic addiction.  (Doc. 10, Tr. 469-479, PAGEID #: 516-526.)  Both hospital stays were for less than one week.  (*Id.*)  Following the hospitalizations, and under the treatment of Dr. Stewart Fem, Plaintiff received medication management at Six County Inc. on seven occasions between October 2007 and January 2010 for generalized anxiety disorder and major depression.  (*Id.*)  He was treated with Cymbalta, Seroquel, Doxepin, and Trazedone, and later Klonopin for panic disorder.  In January of 2010, Dr. Fem noted:

> [Plaintiff's] improvement has been sustained.  Indeed he has been working as the manager of Chestnut House. He is alert and oriented. Speech and thought are coherent and well organized. No depression or suicidal ideation. No psychotic symptoms. His sleep is improved.  He no longer has panic attacks. He feels

> somewhat guilty about having several beers on one occasion since his last visit. However he has not resumed regular drinking. Indeed he stopped his Seroquel, Klonopin and Doxepin. He is pleased with his response to treatment. His Trazodone and Doxepin will be [discontinued].

(*Id.*)

The record also includes the reports of three examining doctors: Gary Wolfgang, Ph.D.; Psychologist James Spindler, MS; and Elvin Coblentz, Ph.D. The record includes no treating-physician reports.

Dr. Wolfgang psychologically evaluated Plaintiff in connection with his application for benefits through Ohio's Job and Family Services in 2009 and 2011. (*Id.* at PAGEID #: 527-533.) With Dr. Wolfgang in 2009, Plaintiff reported mood swings and obsessive/compulsive behaviors but denied suicidal or homicidal thinking, reported no panic attacks, and displayed good hygiene. (*Id.* at PAGEID #: 531.) Dr. Wolfgang diagnosed Plaintiff with moderate mixed bipolar disorder, obsessive compulsive disorder, and polysubstance dependence in early full remission. (*Id.*) He also assigned Plaintiff a Global Assessment Functioning ("GAF") score of 52, indicating moderate symptoms or difficulties in social, occupational, or school functioning. In addition, Dr. Wolfgang completed a mental capacity questionnaire, indicating Plaintiff to be markedly or extremely limited in nine of the 20 work-related abilities listed. (*Id.* at PAGEID #: 527.)

Dr. Wolfgang again examined Plaintiff in 2011, coming to somewhat similar conclusions. (*Id.* at PAGEID #: 735.) He lowered Plaintiff's GAF score to 45 (*id.* at PAGEID #: 738) but improved his marks for work-related skills, like "the ability to carry out very short and simple instructions," "[t]he ability to maintain attention and concentration for extended periods,"

and "[t]he ability to respond appropriately to changes in the work setting."  (*Compare* PAGEID #: 527, *with* PAGEID #: 733.)

Dr. Spindler evaluated Plaintiff's mental status in April 2012, at the request of the Ohio Division of Disability Determination.  Dr. Spindler interviewed Plaintiff regarding his personal life, medical history, behavioral history, and vocational and educational training.  (*Id.* at PAGEID #: 647-648.)  Dr. Spindler concluded that Plaintiff had a bipolar disorder not otherwise specified ("NOS"), a depressive disorder NOS, and a generalized anxiety disorder.  (*Id.* at PAGEID #: 650.)  In addition, Dr. Spindler diagnosed alcohol and substance dependence in sustained full remission.  (*Id.*)  Dr. Spindler assigned Plaintiff a GAF score of 50 and opined that Plaintiff's "poor state of mental health seems likely to preclude successful vocational employment," (*Id.* at PAGEID #: 651), and that Plaintiff "seems unlikely to respond appropriately to even the routine stressors of competitive employment."  (*Id.* at PAGEID #: 652.)

Dr. Coblentz examined Plaintiff in October of 2014.  (*Id.* at PAGEID #: 771.)  He assigned Plaintiff a GAF score of 35 and opined that Plaintiff's ability to understand, recall and follow instructions was severely impaired, as well as his ability to focus, concentrate, and persist with task completion.  (*Id.*)  Dr. Coblentz additionally opined that Plaintiff had a strong tendency to avoid social contacts and become overwhelmed with perceived social stressors.  (*Id.* at PAGEID #: at 774-775.)

Two state agency reviewing physicians, Paul Tangeman, Ph.D. and Tonnie Hoyle, Psy.D., reviewed Plaintiff's records.  In his report, Dr. Hoyle opined that Plaintiff had only moderate limitations in the broad functional areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (*Id.* at PAGEID #: 226-227,

7

236-237.)  Dr. Tangeman likewise found Plaintiff's limitations in these areas to be "moderate" and further opined that Plaintiff was capable of performing simple, repetitive tasks in a static work environment where interaction with others was superficial.  (*Id.* at PAGEID #: 199-200, 211-215.)  He additionally noted that Plaintiff has "3 or 4 friends with whom he stays," was cooperative during the exam, and has experienced no episodes of decompensation, making moderate limitations "more appropriate."  (*Id.* at PAGEID #: 201.)

At the ALJ's request, Douglas Pawlarczyk, Ph.D., also assessed Plaintiff's mental RFC. (*Id.* at PAGEID #: 81-82, 174-90.)  Based on Plaintiff's self-reported daily activities, Dr. Pawlarczyk  opined that Plaintiff was okay with performing activities of daily living.  (*Id.* at PAGEID #: 177-79.)   He believed Plaintiff had moderate limitations in social interactions because of Plaintiff's suicidal ideation, irritability when stressed, and difficulty sustaining relationships secondary to depression.  (*Id.* at PAGEID #: 179.)   Dr. Pawlarczyk further noted that Plaintiff was mildly impaired in maintaining concentration and moderately impaired in maintaining persistence and pace because he had difficulty completing tasks, had some obsessive compulsive behaviors, and became irritable when stressed.  (*Id.* at PAGEID #: 179-80.)  He said that Plaintiff had had no episodes of decompensation.  (*Id.* at PAGEID #: 180.)  Dr. Pawlarczyk opined that Plaintiff could deal with routine changes but not strict production quotas.  (*Id.* at PAGEID #: 181.)  He believed that Plaintiff should have no public interaction and only minimal interaction with coworkers and supervisors.  (*Id.*)  Based on Plaintiff's average to low-average intelligence, he could perform at least simple, repetitive tasks.  (*Id.* at PAGEID #: 182.)  In this case, Dr. Pawlarczyk defined Plaintiff's moderate impairments in persistence to mean that he could perform simple, repetitive tasks 100% of the time, and would not have trouble as long as

the other restrictions were in place, namely those relating to stress and social interactions.  (*Id.* at PAGEID #: 181.)

### 3. Physical Health Records

The primary physical health record at issue here is the report of Dr. Judith Brown, who examined Plaintiff at the request of the Social Security Administration's state agency, the Ohio Disability Determination Division.  (*Id.* at PAGEID #: 654-663.)  After examining Plaintiff and reviewing his records, Dr. Brown noted: a limited range of motion in Plaintiff's hip, knee, and spine; constant lower back pain and right leg pain when weight bearing; and morbid obesity and a shortness of breath when in the supine position.  (*Id.* at PAGEID #: 658.)  Dr. Brown also noted, "[Plaintiff] is not able to walk on the heels, toes without heel-to-toe or squat," and "[Plaintiff]'s ability to  perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling, as well as pushing and pulling heavy objects was at least mildly affected[.]"  (*Id.* at PAGEID #: 658-59.)  Dr. Brown opined that Plaintiff "could probably perform sedentary work."  (*Id.* at PAGEID #: 659.)

### 4. Work Assessment

Plaintiff received an assessment of work aptitudes and limitations in November of 2009, through the Ohio Rehabilitation Services Commission.  (*Id.* at PAGEID #: 583-84.)  Plaintiff offered to the Commission a work history similar to the one he gave at the hearing before the ALJ. (*Id.* at PAGEID #: 583.)  Plaintiff was assessed with no physical limitations other than difficulty squatting.  (*Id.* at PAGEID #: 584.)  Plaintiff had problems with punctuality because his car broke down, but no problems after it was fixed.  (*Id.* at PAGEID #: 584.)  He had proper rapport with coworkers on each of his three jobs sites, was courteous to others, and respectful to

9

those governing him.  (*Id.* at PAGEID #: 583.)  He reportedly seemed to understand what needed

to be done when he was assigned a task, and was knowledgeable in many areas.  (*Id.*)  He had

appropriate hygiene and dress at all times.  (*Id.*)  Plaintiff's evaluator was of the opinion that he

was, "prepared for community employment.  He is knowledgeable in many areas.  He does a

great job in any cleaning details that are assigned to him.  He is meticulous in his work." (*Id.* at

PAGEID #: 583-84.)

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is

supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  The

Commissioner's findings of fact must also be based upon the record as a whole.  *Harris v.*

*Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account

whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS,*

*Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002).

## III. DISCUSSION

This case presents five issues for review:  (1) whether substantial evidence supported the

ALJ's assessment of Plaintiff's mental residual functional capacity; (2) whether the ALJ

reasonably weighed the opinion of examining physician, Dr. Judith Brown; (3) whether the ALJ

reasonably considered obesity; (4) whether the ALJ reasonably developed the record and whether any error was harmless; and (5) whether remand for additional proceedings or a reversal and an award of benefits would be appropriate for any errors.

## A.  Plaintiff's Mental Residual Functional Capacity

In determining Plaintiff's mental RFC, the ALJ relied on the opinions of two state agency reviewing physicians, a testifying medical expert, a job coach's assessment, and Plaintiff's self-reporting.  The question at this stage is not whether the Court would have come to the same conclusion as the ALJ but whether substantial evidence supports the ALJ's mental RFC determination.  *See Winn v. Comm'r of Soc. Sec.*, 615 F. App'x at 320.

### 1.  The ALJ's Analysis

The ALJ relied on the reports of two state agency reviewing physicians, Dr. Tangeman and Dr. Hoyle.  In his report, Dr. Hoyle opined that Plaintiff had only moderate limitations in the broad functional areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (*Id.* at PAGEID #: 226-227, 236-237.)  Dr. Tangeman likewise found Plaintiff's limitations in these areas to be "moderate" and further opined that Plaintiff was capable of performing simple, repetitive tasks in a static work environment where interaction with others was superficial.  (*Id.* at PAGEID #: 199-200, 211-215.)  He additionally noted that Plaintiff has "3 or 4 friends with whom he stays," was cooperative during the exam, and has experienced no episodes of decompensation, making moderate limitations "more appropriate."  (*Id.* at PAGEID #: 201.)

The ALJ also considered a 2009 assessment performed by the Ohio Rehabilitation Services Commission.  (*Id.* at PAGEID #: 76-77 (citing *id.* at 583-84).)  As part of the

assessment, Plaintiff was assigned jobs at three locations (a nursing home, a church, and an auction gallery), and Plaintiff's performance was assessed over the course of three months. (*Id.* at PAGEID #: 585-86.) Plaintiff was able to perform all tasks independently, and his performance was rated as average to above average. (*Id.*) Plaintiff had some issues with transportation but once his car was repaired, had no attendance or punctuality issues. (*Id.* at PAGEID #: 583.) The assessor, job coach Natalie Stillion, noted that Plaintiff developed proper rapport with co-workers; was courteous to others and respectful to those governing him; and understood assignments with little need for coaching. (*Id.* at PAGEID #: 585-86.) At the end of the assessment, Ms. Stillion found Plaintiff prepared for community employment. (*Id.* at PAGEID #: 584.)

The ALJ also sought the opinion of a medical expert, Douglas Pawlarczyk, Ph.D., to assess Plaintiff's mental RFC. (*Id.* at PAGEID #: 81-82.) Based on Plaintiff's self-reported daily activities, Dr. Pawlarczyk opined that Plaintiff was okay with performing activities of daily living. (*Id.* at PAGEID #: 177-79.) He believed Plaintiff had moderate limitations in social interactions because of Plaintiff's suicidal ideation, irritability when stressed, and difficulty sustaining relationships secondary to depression. (*Id.* at PAGEID #: 179.) Dr. Pawlarczyk further noted that Plaintiff was mildly impaired in maintaining concentration and moderately impaired in maintaining persistence and pace, because he had difficulty completing tasks, had some obsessive compulsive behaviors, and became irritable when stressed. (*Id.* at PAGEID #: 178-79.) He found Plaintiff had had no episodes of decompensation. (*Id.* at PAGEID #: 179.)

Dr. Pawlarczyk opined that Plaintiff could deal with routine changes but not strict production quotas.  (*Id.* at PAGEID #: 181.)  He believed that Plaintiff should have no public interaction, and minimal interaction with coworkers and supervisors.  (*Id.*)  Based on Plaintiff's average to low-average intelligence, he could perform at least simple, repetitive tasks.  (*Id.* at PAGEID #: 182.)  In this case, Dr. Pawlarczyk defined Plaintiff's moderate impairments in persistence to mean that he could perform simple, repetitive tasks 100% of the time, and would not have trouble as long as the other restrictions were in place, namely those relating to stress and social interactions.  (*Id.*)

In addition to the expert opinions and the job coach's assessment, the ALJ considered Plaintiff's own words.  Plaintiff was interviewed telephonically in February 2011 and January 2012.  During the first interview, Plaintiff reported independent living and weekly or even daily interactions with friends.  (*Id.* at PAGEID #: 433.)  During the second interview, he reported similar habits and, at the time, was living with a friend and noted that a friend helps him pay bills.  (*Id.* at PAGEID #: 445.)

Based on the foregoing, the ALJ found Plaintiff could understand, carryout, and remember simple instructions and make uncomplicated judgment calls in low-stress environment, which he defined as precluding high-production quotas, strict time requirements, arbitration, negotiation, confrontation, directing the work of, or being responsible for safety of others.  (*Id.* at PAGEID #: 72.)  The ALJ further found that Plaintiff could perform work involving no more than occasional interaction with supervisors and coworkers and no direct interaction with the public.  (*Id.*)  The agency reviewers' reports, the job assessment, Dr.

Pawlarczyk's testimony, and Plaintiff's self-reporting constitute substantial evidence in support of the ALJ's conclusion.

### 2.  Plaintiff's Arguments

Plaintiff attacks the ALJ's opinion in a variety of ways.  He first criticizes the ALJ's reliance on the opinions of the two state agency psychiatrists and Dr. Pawlarczyk because they did not consider later-submitted evidence.  In particular, Plaintiff attacks the state agency reviewers' reports because they did not have Dr. Wolfgang's evaluations and attacks Dr. Pawlarczyk's testimony because he did not have Dr. Coblentz's report.  The ALJ, however, is entitled to rely on the opinion of state agency reviewing psychologists, even where there is later-submitted evidence.  *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition.  It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after Dr. Starkey's assessment,  . . . including Dr. Goldstick's contrary assessment, and took into account any relevant changes in McGrew's condition."); *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) ("Even if [the State agency physician's] RFC was completed without knowledge of these [medical] issues, however, the record reflects that the ALJ considered them.").  The key is whether the ALJ himself considered the later-submitted evidence.  And, here, he did.  The ALJ expressly considered Dr. Wolfgang's evaluations (*id.* at PAGEID #: 76, 79-80) and Dr. Coblentz's report  (*id.* at PAGEID #: 82-83).

Plaintiff further disputes whether the medical examiner, Dr. Pawlarczyk, had access to the remainder of the medical record before rendering his opinion.  While it appears that Dr.

Pawlarczyk was somewhat confused during the hearing about whether there was one or two opinions by Dr. Wolfgang (*see id.* at PAGEID #: 186), Dr. Pawlarczyk testified that he reviewed the entire record.  (*Id.* at PAGEID #: 177-78.)

Finally, Plaintiff argues that the four opinions from three examining sources, Dr. Wolfgang, Dr. Spindler, and Dr. Coblentz, must trump the other evidence in the record.  The ALJ, however, provided bases for discounting these opinions.  Dr. Wolfgang examined Plaintiff twice—once in February 2009, and again in January 2012.  In weighing Dr. Wolfgang's opinions, the ALJ noted that Dr. Wolfgang was not a treating psychologist and his opinions of extreme social limitations were not supported by Plaintiff's attitude, behavior, or observable symptoms during the course of the examination.  (*Id.* at PAGEID #: 76.)  In particular, the ALJ identified Plaintiff's testimony that he was living with a friend to be inconsistent with extreme or marked social limitations.  (*Id.*)  Supportability and consistency matter in weighing opinion evidence. 20 C.F.R. §§ 404.1527(c)(3), 404.1527(c)(4).

The ALJ also noted that Dr. Wolfgang's estimate of marked and extreme limitations in Plaintiff's ability to work with or in proximity to others was inconsistent with observations of Plaintiff's 2009 job coach.  The ALJ reasonably gave greater weight to the observations of the job coach because she was able to make direct observations of Plaintiff in the workplace over a period of several months.  (*Id.* at PAGEID #: 80.)  Other sources, such as job coaches, may be entitled to greater weight than medical sources. *See* 20 C.F.R. § 404.1513(d), Social Security Ruling 06-3p ("An opinion from a "non-medical source" who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source.").  Here, Plaintiff's job coach had

15

more sustained contact with Plaintiff than did Dr. Wolfgang, who saw Plaintiff only two times. In addition, the ALJ identified specific instances where Plaintiff's reports to Dr. Wolfgang were not fully consistent with other evidence of record, including his previous evaluation by Dr. Wolfgang.  (*Id.* at PAGEID #: 80-81.)  For example, in 2011, Plaintiff told Dr. Wolfgang that he had been addicted to cocaine 10 years earlier, but had never injected or smoked the substance, whereas in 2009 Plaintiff admitted injecting cocaine.  (*Id.* at PAGEID #: 80-81.)  The ALJ thus reasoned that Dr. Wolfgang could not be expected to make an accurate assessment of Plaintiff's limitations when he was provided with inaccurate information.  (*Id.* at PAGEID #: 80.)

The ALJ similarly found inconsistencies or misstatements in Plaintiff's representations to examining psychiatrists Dr. Spindler and Dr. Colbentz, which weighed against the value of their opinions.  (*Id.* at PAGEID #: 77-78, 82-83.)  For example, Plaintiff told Dr. Spindler in 2012 that he had not used illegal drugs for the past 11 years, whereas he told treatment providers at Six County, Inc. that he used marijuana and Oxycotin in 2007.  (*Id.* at PAGEID #: 77 (citing *id.* at PAGEID #: 536, 647).)  Plaintiff told Dr. Coblentz that that he had never been charged with a misdemeanor or felony, but record evidence shows prior convictions for failure to pay child support and passing bad checks.  (*Id.* at PAGEID #: 82 (citing *id.* at PAGEID #: 624-25, 736.)  In the end, the ALJ found the misstatements, coupled with the observations and other record evidence, weighed against the opinions.  While Plaintiff may wish the ALJ had interpreted the evidence differently, the ALJ supported his mental RFC analysis with substantial evidence, and that is enough.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir.2003); *see also O'Conner v. Comm'r of Soc. Sec.*, No. 4:13–cv–00072, 2013 WL 6817900 (N.D. Ohio 2013).

**B.  Dr. Brown's Opinion**

Plaintiff also challenges how the ALJ's used the opinion of Dr. Judith Brown, a consultative medical examiner who examined Plaintiff in October of 2012.  Plaintiff claims that the ALJ failed to consider the small portion of Dr. Brown's opinion where she opined that Plaintiff was unable to squat.  As an initial matter, Dr. Brown's opinion on this point is not as one-sided as Plaintiff makes it out to be.  Dr. Brown noted, "[Plaintiff] is not able to walk on the heels, toes without heel-to-toe or squat," but also noted, "[Plaintiff]'s ability to  perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling, as well as pushing and pulling heavy objects was at least mildly limited."  (*Id.* at PAGEID #: 658-59.)

But regardless of how Dr. Brown perceived Plaintiff's squatting ability, any failure on the part of the ALJ to consider Dr. Brown's opinion on this point was harmless for two reasons.  First, the ALJ gave Dr. Brown's opinion "limited weight" because he found Plaintiff was giving "inconsistent effort" during the examination, and the ALJ therefore relied on the other record evidence, including the opinion of the state agency reviewing physician, to limit Plaintiff to light work.  (*Id.* at PAGEID #: 79-81, 83-84.)  Second, Dr. Brown found Plaintiff could perform sedentary work.  (*Id.* at PAGEID #: 659.)  And the vocational expert testified that there would be jobs existing in significant numbers that would satisfy the other non-exertional limitations.  (*Id.* at PAGEID #: 160-61.)  Thus, even if Plaintiff were limited to sedentary work, he would not be found disabled.  Any error in the ALJ's weighing of Dr. Brown's opinion accordingly was harmless.  *See Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[C]ourts are

not required to convert judicial review of agency action into a ping-pong game where remand would be an idle and useless formality.") (citations and quotations omitted).

## C. Obesity

Plaintiff next argues the ALJ did not satisfactorily consider his obesity. Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002), explains the Administration's policy and protocol on evaluating obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-01p. The Ruling further recognizes obesity as "a risk factor that increases an individual's chances of developing impairments in most body systems" and notes that obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body symptoms." *Id.* at *3. Additionally, "obesity may also cause or contribute to mental impairments such as depression." *Id.* Despite obesity being a risk factor, the Ruling cautions that it "does not mean that individuals with obesity necessarily have any of these impairments." *Id.* The Ruling directs ALJs to consider obesity in determining (1) whether a claimant has a medical impairment, (2) whether that medical impairment is severe, (3) whether the claimant's impairment meets or equals a listed impairment, and (4) whether the claimant could perform her past work or other work existing in significant numbers. *Id.*

Here, the ALJ considered Plaintiff's obesity more than once. The ALJ found it was a serious impairment. (*Id.* at PAGEID #: 68.) He then acknowledged Plaintiff's BMI placed him in the morbidly obese category and expressly considered Plaintiff's obesity and its effect "both on the severity of Plaintiff's limitations and on his residual functional capacity." (*Id.* at PAGEID #: 71.) The ALJ sufficiently considered obesity. *See Bledsoe v. Barnhart*, 165 F. App'x 408,

18

411–12 (6th Cir. 2008) (upholding denial of benefits where ALJ "made explicit mention of [planitiff's] obesity in his finding of facts" and credited the opinions of experts who considered plaintiff's obesity).

## D.  Amending the Record

Plaintiff argues an additional error and claims his constitutional rights have been violated because Exhibit 22E was not included (in its entirety) in the appellate record to the Appeals Council.  Exhibit 22E includes a letter from Plaintiff's counsel, correspondence from several psychologists regarding how each defines the term "moderate," and an uncompleted mental residual functional capacity questionnaire.  (Doc. 31-1, PAGEID #: 863-74.)  Several pages of this exhibit refer to other claimants, and the Commissioner represents that the exhibit was withheld purposefully on this basis.  (Doc. 19 at 18.)  While the exhibit includes a letter from Dr. Wolfgang, the other psychologists whose letters are included never evaluated Plaintiff.  (Doc. 31-1, PAGEID #: 865-71.)  Plaintiff fails to explain how the exclusion of psychologists' letters unrelated to this case violates his constitutional due process rights.  Moreover, the letter from counsel *was* included in the appellate record and summarizes the content of the psychologists' letters:

> Dr. Wolfgang has indicated that he considers the term "moderate" to mean an inability to function in an area from 11% to 25% of the workday or workweek, which is the same definition provided to Ms. Droste at the hearing when presented with hypothetical questions on cross examination regarding each of the two assessment forms completed by Dr. Wolfgang.  I have also enclosed letters from Dr. Yee, Dr. Gorga, Dr. Kohler and Dr. Dubbeling, all of which perform mental status disability consultative examinations and all of which use similar definitions of the term "moderate."

(Doc. 31-1, PAGEID #: 863.)  Accordingly, even if it was error not to include Exhibit 22E in the appellate record, the error was harmless.

**E. Remand Or Reversal**

Finally, Plaintiff asks for either a remand for additional proceedings or a reversal and an award of benefits. For the foregoing reasons, the undersigned magistrate judge recommends neither.

## IV. RECOMMENDED DISPOSITION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of the Commissioner.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  May 20, 2016                          /s/ Kimberly A. Jolson
                                             KIMBERLY A. JOLSON
                                             UNITED STATES MAGISTRATE JUDGE