**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JERRY A. GLASGOW,** | : | |
| | : | Case No. 2:15-CV-01831 |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Magistrate Judge Jolson |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter before the Court is Plaintiff's Objection to the Magistrate Judge's May 20, 2016 **REPORT AND RECOMMENDATION** ("R&R") (Doc. 23), which recommended that this Court overrule Plaintiff's Statement of Specific Errors (Doc. 11). Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED**, and the Court **ADOPTS** the Magistrate Judge's **Report and Recommendation**.

### II. BACKGROUND

The Magistrate Judge fully set forth the facts of this case in the May 20, 2016 R&R. (*See* Doc. 23 at 1-10.) Plaintiff does not contest the Magistrate Judge's summary of the facts or include a summary of facts in their objections to the Magistrate Judge's R&R. Accordingly, the Court will only discuss facts pertinent to this Opinion and Order.

On November 24, 2014, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and, thus, not entitled to Social Security Administration ("SSA") disability benefits.

(First Certified Admin. R., Doc. 10 at PAGEID #: 62-86.) In denying benefits, the ALJ conducted the requisite five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset of disability on April 15, 2006. (Doc. 10 at PAGEID #: 68.) At step two, the ALJ concluded that the Plaintiff had the following severe impairments: obesity, probable chronic obstructive pulmonary disease (COPD), major depression, adjustment disorder, obsessive compulsive disorder, generalized anxiety, alcohol dependence, alcohol abuse, and

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled....
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

20 C.F.R. § 404.1520(a)(4).

polysubstance abuse in remission. (*Id*. at PAGEID #: 68.) At step three, the ALJ determined that these impairments did not meet or equal one of the listed impairments described in 20 C.F.R. pt. 404, subpt. P, app'x 1. (*Id*. at PAGEID #: 70.) Prior to step four[2], the ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds, can only occasionally balance, stoop, kneel, crouch and crawl or climb ramps/stairs, should avoid concentrated exposure to dust, fumes, odors, gases, and poor ventilation. He can understand, carryout [sic], and remember simple instructions and make judgments on simple work in low stress environment defined as precluding high production quotas, such as piecework or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of, or being responsible for the safety of others and that involves no more than occasional interaction with supervisors and coworkers and no direct interaction with the public.

(*Id*. at PAGEID #: 72.).

In crafting the RFC, the ALJ determined that the medical opinions of non-examining sources were more credible than the opinions of examining sources. The RFC was based primarily on: the findings of two state agency reviewing physicians, Drs. Paul Tangeman, PhD, and Dr. Tonnie Hoyle, Psy. D.; testimony from a medical expert, Dr. Douglas Pawlarczyk, PhD; and the opinion of a job coach who oversaw Plaintiff for three months at three different jobs.

Dr. Hoyle opined that Plaintiff had moderate limitations in the broad functional areas of daily living, such as maintaining social functioning, concentration, persistence or pace. (*Id*. at PAGEID #: 226-27.) Similarly, Dr. Tangeman believed that Plaintiff was capable of performing simple repetitive tasks in a static work environment. (*Id.* at PAGEID #: 236-37.) Dr. Pawlarczyk

---

[2] "Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n. 3 (6th Cir. 2009).

3

concluded that Plaintiff had moderate limitations as well. (*Id.* at PAGEID #: 81-82.) Finally, the job coach reported that Plaintiff was independently able to perform all of the tasks he was assigned, and rated him as average or above average in those tasks. (*Id.* at PAGEID #: 585-86.)

There are four examining sources found in the record, none of which was a treating source.[3] Dr. Judith Brown examined the Plaintiff for physical limitations once in October 2012. (Doc. 10 at PAGEID #: 654-63.) Dr. Brown noted that "[Plaintiff] is not able to walk on the heels [or] toes without heel-to-toe or squat," and also noted that "[Plaintiff]'s ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling, as well as pushing and pulling heavy objects was at least mildly limited." (*Id.* at PAGEID #: 658-59.) Dr. Brown concluded that Plaintiff could "probably do sedentary work," but that the separate muscle testing that she had administered was unreliable due to "too much variation." (*Id.* at PAGEID #: 659; 660.) Ultimately, the ALJ ruled that the portions of Dr. Brown's report that were of her observations and objective evidence were to be accepted, but the muscle testing results were to be given limited weight. (*Id.* at PAGEID #: 79.)

Dr. Gary Wolfgang, PhD, psychologically evaluated Plaintiff twice: first in 2009, and again in 2011. In 2009, Dr. Wolfgang determined that the Plaintiff had moderate difficulties in social, occupational or school functioning. (*Id.* at PAGEID #: 527.) In 2011, his prognosis was less optimistic, and he indicated that Plaintiff suffered from serious symptoms relating to his mental functional capability. (*Id.*)

Psychologist James Spindler, MS, and Dr. Elven Coblentz, PhD, each evaluated the Plaintiff once, in 2012 and 2014, respectively. (*Id.* at PAGEID #: 652; 771.) Both determined

---

[3] "A treating source, accorded the most deference by the SSA, has not only examined the claimant but also has an 'ongoing treatment relationship' with her consistent with accepted medical practice." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).

that Plaintiff suffered from symptoms that would "preclude successful vocation employment." (*Id*. at PAGEID #: 651; 771.) All four examining sources made their assessment based mainly on the information provided to them by Plaintiff. (*Id.* at PAGEID #: 78, 79, 80, 83.)

In addition to expert opinions, the ALJ considered Plaintiff's personal accounts. Plaintiff reported in his first interview independent living as well as weekly, sometimes daily, interaction with friends. (*Id*. at PAGEID #: 433.) During his second interview, Plaintiff reported similar habits and was, at the time, living with a friend who helped him pay his bills. (*Id*. at PAGEID #: 445.)

In step four, after determining Plaintiff's RFC, the ALJ found that given these limitations, Plaintiff would be unable to perform his past relevant work. (*Id*. at PAGEID #: 85.) At step five, the ALJ concluded that even though Plaintiff could not perform his past relevant work, there still existed a significant number of jobs in the national economy that he was capable of performing and, thus, Plaintiff was deemed not disabled within the meaning of the Social Security Act. (*Id*. at PAGEID #: 85-86.) In making that determination, the ALJ relied on a vocational counselor who testified, in response to hypotheticals concerning a worker similarly situated, that Plaintiff would be able to perform jobs requiring light or sedentary work. (*Id.* at PAGEID #: 158-62.) Upon rendering its decision, Plaintiff requested review, which the Appeals Council denied, adopting the ALJ's decision as the SSA Commissioner's ("Commissioner") final decision. (Doc. 23 at 3.)

Plaintiff then filed suit in this Court. On May 20, 2016, the Magistrate Judge issued its R&R, recommending that the Court overrule Plaintiff's August 19, 2015 Statement of Specific Errors (Doc. 11), and sustain the finding of the ALJ. (Doc 24.) On June 2, 2016, Plaintiff

5

objected to the Magistrate Judge's R&R. On June 16, 2016, the SSA filed a response, resting entirely on its Response in Opposition to Plaintiff's Statement of Errors (Doc. 19). (Doc. 25.)

### III.     STANDARD OF REVIEW

This Court, upon objection from a Magistrate Judge's ruling, is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3).

The Court's review of a Social Security decision "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Substantial evidence "is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole, *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted), and "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion," *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted), which is to say that the Court's task is not to determine whether it would have made the same decision as the ALJ, but rather to discern whether there is substantial evidence in the record to support the ALJ's decision. *See Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015).

Under 42 U.S.C. § 405(g), any issue "as to any fact, if supported by substantial evidence, shall be conclusive." *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("When deciding . . . whether substantial evidence supports the ALJ's decision, [a reviewing court] does not try the case de novo, resolve conflicts in evidence, or decide questions of credibility.") (citation omitted)). But although the substantial evidence standard affords the ALJ discretion, "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

## IV.     ANALYSIS

Plaintiff objects to the Magistrate Judge's Report and Recommendation on three grounds, namely that the ALJ: (1) improperly weighed the medical opinions of Dr. Brown, and cherry-picked opinions from her evaluation; (2) did not properly consider Plaintiff's obesity when determining his impairments; and (3) improperly rejected examining sources of record when determining Plaintiff's RFC.  The Court addresses each objection in turn:

### A. Weight and Treatment of Dr. Brown's Opinions

Plaintiff's first objection to the Magistrate Judge's R&R concerns the weight given by the ALJ to medical opinions. Specifically, Plaintiff objects to the Magistrate's finding that the ALJ's analysis of Dr. Brown's opinions constituted harmless error. Plaintiff finds fault with several aspects of the ALJ's analysis of Dr. Brown's opinions. Dr. Brown personally observed Plaintiff, conducting her own examinations and muscle testing. (*Id.*) She also reviewed Plaintiff's medical history, including the results of prior muscle tests administered by other health professionals. (*Id.*) Plaintiff finds flawed the ALJ's giving credence to Dr. Brown's personal observations while also giving limited weight to Dr. Brown's other opinions. (*See* Doc. 10 at PAGEID #: 79)

7

("[H]er report that the claimant's muscle testing was unreliable because of variable results suggest that the claimant was giving inconsistent effort, and that insofar as her opinion is based on the claimant's efforts and subjective report of symptoms, her opinion also cannot be completely relied upon. Therefore, Dr. Brown's opinion is accepted only with regard to her own observations and objective signs, and is otherwise given limited weight."). Plaintiff finds it significant that neither the ALJ nor the Magistrate "pointed to which opinions were given 'limited weight' and which were accepted." (Doc. 24 at 4.)

Although clarifying what, exactly, of Dr. Brown's opinion the ALJ discounted and what it did not would have made for a more thorough decision, SSA regulations "require[] ALJs to give reasons for only *treating* sources." *Smith*, 482 F.3d at 876. Put another way, an ALJ's "failure to discuss thoroughly the opinion of a consultative examiner does not warrant reversal." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) (holding that it was not reversible error when an ALJ failed to explain why he disregarded part of a consultative examiner's opinion). But although the ALJ need not thoroughly discuss its analysis of non-treating examiner opinions, "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Because Dr. Brown was not a treating source, the ALJ's failure to elucidate which of Dr. Brown's opinions were accepted, which were not, and why, is not reversible error *per se*. As discussed at length in pt. C, *infra*, the ALJ provided enough of a rationale for this Court to trace its reasoning, which included

the fact, among others, that the examining sources' recommendations were based in large part on Plaintiff's subjective self-reporting while applying for benefits.[4]

In sum, the ALJ's decision has left enough for the Court to follow its path of reasoning: namely, that it afforded greater weight to the opinions of those who directly examined Plaintiff and whose reports were based on personal observation as opposed to Plaintiff's subjective self-reporting. As such, the Court finds that the Magistrate was correct to find both that the ALJ did not err in its treatment of expert witness opinion, and that the record provides substantial evidence to support the ALJ's conclusion.

Plaintiff next argues that the Magistrate erred in finding that the ALJ committed harmless error when the hypothetical it used to determine whether there were jobs in significant numbers in the national economy was inaccurate. Specifically, Plaintiff takes issue with the ALJ's failure to include his purported inability to squat. In order for a reviewing court to find substantial evidence that jobs exist in the national economy for someone with Plaintiff's restrictions, the Court must be satisfied that the vocational expert considered a hypothetical that accurately reflects the physical and mental limitations of the Plaintiff. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("In order for a [vocational expert]'s testimony to constitute substantial evidence that a significant number of jobs exists, 'the question[s] must accurately portray a claimant's physical and mental impairments.'") (quoting *Ealy*, 594 F.3d at 516). But this requirement is

---

[4] *See* Doc. 10 at PAGEID #: 76 (affording Dr. Wolfgang's first evaluation little weight because he was not a treating source and did not observe Plaintiff, and because Plaintiff, who was applying for benefits, had incentive to exaggerate his symptoms); 80 (discounting Dr. Wolfgang's second evaluation for the same reasons as the first, and also because it was contradicted by Plaintiff's prior self-reporting and the observations of the vocational experts); 77 (discounting Spindler's evaluation because it was based on Plaintiff's "subjective presentation and complaints," and was outweighed by other record evidence); 83 (finding Dr. Coblentz's analysis of little weight because it was based both on a brief examination of Plaintiff and misstatements of Plaintiff).

fulfilled if the proffered hypothetical possesses the same limitations as the RFC, even if the hypothetical is inaccurate, so long as the record possesses sufficient evidence to support the ALJ's RFC finding. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 844-45 (6th Cir. 2005) ("Because (1) the ALJ relied solely on the testimony of the [vocational expert] regarding the number of jobs which [the claimant] could perform in the economy, (2) the [vocational expert]'s testimony was based on a hypothetical that reflected the same mental/emotional limitations that we find supported by substantial evidence, and (3) such testimony was based on a hypothetical that was more favorably physically than the RFC we find supported by substantial evidence, we hold that finding an RFC different from the hypothetical given the [vocational expert] was not reversible error.").

Preliminarily, the record does not support Plaintiff's assertion that Dr. Brown found him unable to squat. To the contrary, Dr. Brown's report found that

> [Plaintiff's] ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be at least mildly affected by the findings noted. He could probably perform sedentary work.

(Doc. 10 at PAGEID #: 222.)

Even if Dr. Brown had indicated that Plaintiff was unable to squat, and that therefore he would have limited Plaintiff to work less rigorous than determined by the ALJ, in this instance, not only did the ALJ propose a hypothetical for limiting the Plaintiff to a maximum of light work, which comported with the RFC, (Doc. 10 at PAGEID #: 72, 158), but it also proposed an additional hypothetical to determine Plaintiff's options for available jobs if Plaintiff was in fact limited to sedentary work. (*Id.* at PAGEID #: 160-61.) This was an acceptable decision by the ALJ, because the first hypothetical mirrored the RFC, and the second was more favorable to the Plaintiff. Because the ALJ proposed a hypothetical to the vocational expert even more limited

than the RFC (and as limited as Plaintiff believes it should have been), any error committed by the ALJ in ostensibly discounting Plaintiff's inability to squat was harmless. *See Pasco*, 137 F. App'x at 844-45.

### B. Consideration of Plaintiff's Obesity

Plaintiff's second objection concerns the sufficiency of the ALJ's consideration of Plaintiff's obesity disability, namely that the ALJ's consideration violated Social Security Ruling ("SSR") 02-01p, 2000 WL 628049, in finding that Plaintiff's obesity was non-severe. SSR 02-01p does not, however, require the ALJ to undertake a specific mode of analysis concerning obesity. *Bledsoe v. Comm'r of Soc. Sec.*, 165 F. App'x 408, 411-12 (6th Cir. 2006) ("Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of other limitations."). SSR 02-01p requires the ALJ to consider obesity in combination with the Plaintiff's other impairments when making a decision on the functionality of the claimant. *Id.* at 412. The ALJ satisfies this requirement either by considering obesity in its report, *id.*, or by "credit[ing] an expert's report that considers obesity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (citation omitted) (finding that obesity was sufficiently analyzed when the "ALJ considered RFC's from physicians who explicitly accounted for [Plaintiff's] obesity.").

The Court finds that the ALJ properly considered Plaintiff's obesity in its analysis. The record indicates that the ALJ accounted for Plaintiff's obesity over the course of its findings of fact, including finding it to be a serious impairment. (Doc. 10 at PAGEID #: 68.) In addition, in its findings of fact, the ALJ credited experts who incorporated obesity into their analysis, namely the analyses of Drs. Tangeman and Hoyle. (*Id.* at PAGEID #: 199, 225.) Plaintiff argues that the

experts did not actually analyze Plaintiff's obesity simply because they found it to be non-severe. (Doc. 24 at 8). This argument is unavailing—although Plaintiff is classified in the extreme class of obesity, SSR 02-01p clearly states that "there is no specific level of weight or BMI that equates with a severe or not severe impairment." Given the ALJ's both explicit consideration of Plaintiff's obesity and reliance on expert reports that explicitly mention Plaintiff's obesity, the Court finds that the ALJ's consideration of Plaintiff's obesity complied with SSR 02-01p.

### C. Rejection of Examining Sources in Determining Plaintiff's RFC

Plaintiff's final objection is that the Magistrate erred in finding no harmful error in the ALJ's discounting examining sources when evaluating Plaintiff's RFC. The Court finds no such error. Because neither the examining nor non-examining sources were treating, none was entitled to supreme deference or controlling weight. *Smith*, 482 F.3d at 876-77. When weighing medical opinion evidence of a non-treating source, the ALJ is guided by the factors identified in 20 C.F.R. § 404.1527(c), which include: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the source providing the opinion.

Here, the ALJ assigned great weight to the assessments of the non-examining state agency psychologists and only limited weight to the four examining doctors. The ALJ heavily credited the November 2009 assessment of Plaintiff's work aptitudes and limitations of the Ohio Rehabilitation Services Commission. (Doc. 10 at PAGEID #: 76-77.) Trained vocational evaluators observed Plaintiff on-the-job and noted only slight physical and psychosocial limitations and some problems with tardiness, but also his ability to get along with others and to understand tasks, ultimately finding that Plaintiff was "prepared for community employment."

(*Id.* at PAGEID #: 77.) The ALJ assigned the vocational evaluations great weight because they were based on vocational testing and on-the-job observations by trained vocational evaluators. (*Id.*)

Dr. Wolfgang psychologically examined Plaintiff twice: once in February of 2009 and once in January of 2012, each in connection with Plaintiff's application for benefits through Job and Family Services. (Doc. 10 at PAGEID #: 76). In 2009, Dr. Wolfgang diagnosed Plaintiff with moderate mixed bipolar disorder, obsessive compulsive disorder, and polysubstance dependence in early full remission. (*Id.*) Dr. Wolfgang's examination and diagnoses were based on Plaintiff's subjective reporting, as the evaluation indicates no then-observable symptoms. (*Id.*) Dr. Wolfgang rated Plaintiff with a Global Assessment of Functioning ("GAF")[5] score of 52, which indicates "moderate symptoms and/or difficulties in social, occupational, or school functioning." (Doc. 10 at PAGEID #: 76.) The ALJ afforded Dr. Wolfgang's opinion little weight because he was not a treating source and did not observe Plaintiff's symptoms, instead relying on the subjective account of Plaintiff who was applying for benefits and who, therefore, had incentive to exaggerate the severity of his symptoms. (*Id.*) In 2012, Dr. Wolfgang rated Plaintiff at 45 on the GAF, "indicating serious symptoms." (*Id.* at PAGEID #: 80.) The ALJ nonetheless discounted Dr. Wolfgang's 2012 evaluation for the same reason as it discounted his prior evaluation, namely because it was based not on personal observation but rather on Plaintiff's subjective retelling in an effort to secure benefits. (*Id.*) The ALJ also afforded the 2012 evaluation little weight because Plaintiff's self-reported functioning was inconsistent with

---

[5] An internationally-used rubric indicating the severity of psychiatric illness(es). *See* Guidelines for rating Global Assessment of Functioning (GAF), United States National Library of Medicine, National Institutes of Health, Journal List, Ann Gen Psychiatry, v.10; 2011, PMC 3036670, Jan. 20, 2011, *available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/* (last seen August 21, 2016.)

13

both the actual observations of Plaintiff's 2009 vocational evaluators and Dr. Wolfgang's prior evaluation of Plaintiff. (*Id.*)

Psychologist James Spindler, MS, evaluated Plaintiff in April of 2012 at the request of the Bureau of Disability Determination after Plaintiff approached the bureau saying that he had found himself "unable to work anymore." (*Id.* at PAGEID #: 77.) Spindler diagnosed Plaintiff with bipolar disorder, depressive disorder, generalized anxiety disorder, and alcohol/polysubstance dependence in remission. (*Id.*) Spindler rated Plaintiff with a GAF of 50-55. (*Id.*) The ALJ afforded Spindler's opinion little weight because it was based on Plaintiff's "subjective presentation and complaints," and was outweighed by other evidence in the record, including, again, vocational evaluations based on personal observation. (*Id.*)

As to Dr. Coblentz, the ALJ afforded his opinion little weight because it was based at least in-part on misinformation provided by Plaintiff, including a misstatement of his prior criminal history, and because Dr. Coblentz's opinion was based on evaluation much briefer than what Plaintiff underwent at the disability hearing. (*Id.* at PAGEID #: 83.)

In sum, the ALJ provided enough of a roadmap for a reviewing court to follow. Although Plaintiff would rather the ALJ have credited some sources more than others, and although the Court might have done so itself, the Court need not be satisfied that the ALJ came to the same conclusion that the Court would have, but rather that the ALJ's decision was supported by substantial evidence in the record. *Buxton*, 246 F.3d at 772. The Court finds that the ALJ acted within its discretion afforded by SSA rules and case law to determine which experts to credit, and why. Accordingly, the Court overrules this objection.

## V. CONCLUSION

For the aforementioned reasons, the Court hereby **OVERRULES** Plaintiff's Objection, and **ADOPTS** the Magistrate Judge's **Report and Recommendation**. The case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

      /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 26, 2016**